Thank you, Your Honors. Joe Linsky on behalf of the Plaintiff Appellant Davis Neurology. The predatory advertising and selling practices by Defendant CBS Medical, which are described in great detail in this factual record, is exactly what the Telephone Consumer Protection Act, which is the hardest litigation, was meant to stop. No health care provider, including the plaintiff, wants to receive unsolicited faxes from unknown businesses describing examinations of their patients that never occurred, diagnoses that were never made, and free equipment that does not exist. Also, the CBSes of the world can make a sale on the back of the taxpayer. Even worse in this case, CBS's entire model of pitching doctors to sign these false prescriptions is predicated on Medicare fraud. Not only should doctors not want this type of advertising, but they should be warned to steer clear of ever engaging the CBSes of the world so they don't fall prey to that scheme. Well, isn't that the key? You just said it's advertising. Isn't that the key question here? It is, Your Honor. How do these faxes promote the quality and availability of the particular product? So, first place I turn for that answer is the text of the statute itself. And verbatim, to answer that question, any, and this is a quote, any material advertising the commercial availability or quality of any property, goods, or services, which is transmitted to any person without that person's prior express invitation or permission in writing or otherwise. The latter part of that definition is not in dispute here. There's no dispute the advertisement was unsolicited. There was no existing, CBS, its marketing agent, sent the fax to the plaintiff before there was any relationship of any kind with the plaintiff directly. So that part of the statute is not in dispute. The rest of the statute, this fax solicitation checks all the boxes. On its face, this fax solicitation describes the quality of the braces marketed and sold by CBS and describes how effectively they treat pain. On its face, the fax encourages Davis Neurology to place an order, quote, as soon as possible. And that's P-O-S-I-B-B-L-E. It's not encouraging the doctors to place an order. It's encouraging asking the doctor to write a prescription, right? In this case, Your Honor, they're one and the same. The whole model that CBS employs is the sale of free materials. Yeah, I get it. It may be a business that's not great, and it may be something that maybe is a fraud. I don't know. But that doesn't necessarily mean that you've stated a claim here. Well, this was resolved on summary judgment. And so taking the facts of this case, what makes this case distinct from other cases that Your Honors may have read in the briefing is that the offer, what defendants CBS has offered to sell here, it does not exist. It's a fiction. It's an illusion. The whole transaction is a fraud. Again, it may be a fraud. You might be right. I don't know. Did you refer this to HHS or the U.S. Attorney? Or are you just handling it as a plaintiff's lawyer only? No, Your Honor. My client's not made any complaints in that regard. No. It's just a… This is strictly a TCPA claim. Well, you make a big deal in the briefs about how it's Medicare fraud. I would have thought maybe you would have reported it. And so the reason that point is raised is because the TCPA says what an advertisement is. Now, it also annoyingly says an advertisement is something that advertises. So it's a bit circular in that sense. What the FCC has clarified, and which the district court did not look at and should have looked at, is that when you have what's called a transactional fax, the FCC has carved out what it says is a transactional fax exception. Yeah, but before we get to that, let's still focus on whether this is an advertisement in the first place. You said it's one and the same. You said this is both an order and an advertisement, I think is what you're saying. Is that what you meant by one and the same? No, I was asking the question, is this a prescription versus an order? And I said they're one and the same. In fact, the record is clear. That's exactly what CBS calls them. Why are they one and the same? I mean, the equipment is not going to go to the doctor. That's right. But under the TCPA, that doesn't matter. The case law is clear. The ultimate recipient of the advertising fax does not have to be the end user. It's no less an advertisement because a toy commercial advertises to children, or I'm sorry, to the parents who are going to be buying the toy for their children. But your client isn't going to buy this equipment for the patient. The patient is going to buy it, and Medicare is going to pay for it. And with respect to that, Your Honor, I think the record disagrees on that point. Because what the patient was told on the phone, and this is the basis of when CBS's entire argument is, wait a minute. There was a transaction here. There was a phone call. And during that phone call, what CBS told the patient was, we're giving you free braces to solve your medical problems. And that was it. They asked for their Medicare information. They asked for their doctor's name. What CBS then did, and this is beyond the knowledge or consent of the plaintiff, or I'm sorry, of the patient here, is they went to the doctor. This is part of the scheme. They go to the doctor then and ship them what are falsified, fabricated medical records. And they ask the doctor in those medical records, send these back as soon as possible. And what the plaintiff here testified was, the minute I saw these, I knew they were a fraud. There are medical, the American Association of Family Physicians advises doctors, when you receive an unsolicited prescription like this, you are to disregard it. Well, that's fine. And you're not to get back to the patient. Maybe they should have called the U.S. Attorney's Office or filed a key tam suit or something like that. But the question is, does it fit within this statute, your claim? And so to your point, Your Honor, that's fair. The text of the statute reads, any material, any material. So if it's a false prescription, fabricated prescription, that's material. That counts. That promotes, I'm sorry, that advertises the commercial availability or quality of the goods described in the facts. That's, in essence, what it says. Does it say to the doctor, hey, these are the best possible braces ever, and we therefore think you should help us order them for your client? It doesn't go that far. But what it says is, these will resolve your patient's problems. This will solve their pain. This will help their mobility, et cetera, et cetera. It does tout the quality of these products. And the reason it does that is because under this free, no-cost model, there is no way for CBS to otherwise make this transaction happen. It has to have the doctor place the order. This is not a situation where if it was charging. Why does it have to have the doctor place the order? Why couldn't it just have the doctor give a prescription? Because in this situation, there is no order to speak of of any kind until a doctor places a prescription. Why isn't it a contingent order? Why isn't it a contingent order by the patient saying, as long as you can get a prescription from my doctor that we can use with Medicare to make sure it's paid for by the third party, I want the braces? Why isn't that what's happening? Because here, there is no such thing as free braces. Well, free is just a way of saying somebody else, a third party, is going to pay for it. You're not going to incur any cost. We know it's not free because Medicare is going to pay for it. There is such a thing as braces on which the patient incurs no cost. That's correct, Your Honor. And if they wanted to sell this brace at a cost to the plaintiff, then they would have said here in this record, here's the brace we're charging you for. Why isn't it an order just because Medicare is paying for it? Why can't the patient make the order? Because the patient can't order free braces through Medicare. He can't accept, I'm sorry, let's go back to what an order is. An order is an offer, an acceptance. They cannot offer legally, legitimately, free braces. They can't do that. That's against the law. That's illegal. But it's not illegal to say to someone, listen, we think that this might be covered by Medicare, and if that's the case, you'd have no cost. And if your doctor writes the appropriate prescription, it's okay. So do you give us permission to talk to your doctor about a prescription? I mean, that happens every day, you know, with all sorts of devices. You go and talk to your physical therapist and you say, I think that this brace will get covered, but you're going to need a prescription, and I'm not authorized to write it. You've got to go back to your orthopedic surgeon. Why isn't this just a ham-handed way of doing that, or a fraudulent way or whatever you want to call it? And what Your Honor described would be illegitimate. That would be acceptable. There are cases like Florence and Arwa that say that's fine. That's not the facts here. That's what makes this case distinct. Arwa Chiropractic, which CBS filed as a supplemental authority, recently saying it's on all fours with this case, hits this point directly on the head. It says this case would be different if we had an allegation or if the facts bore out this was a fabricated facts that, I'll speak for itself, these were fabrications or were anything other than legitimate prescription requests for purchases already completed. Arwa points out that there are differences between legitimate and illegitimate. They said that of facts there, summary judgment was appropriate because those weren't the facts. But it does open that door and say, but there are situations we can envision where that is the case. Well, this is the case. And the fact that the doctor is the one who's being pitched effectively to place the order, that's the purpose of the facts. That makes it an advertisement. So starting with the statute, it fits the definition of advertisement. And the lower court didn't really get into that. I think the lower court, like the plaintiff argues here, thought, well, yes, under these facts, it's at least a disputed issue material fact, whether it is an undisputed or unsolicited advertisement. But moving on... So let me ask you this. A regular internist gets probably 1,000 faxes a day to renew various prescription meds. Are those all advertisements? No, because there is a preexisting relationship between the prescription that was originally written and the renewal of that prescription. Well, let's say it's the first one. Dr. Davis, the plaintiff in this case, testified to that very point. He was asked that question. Well, what if you got a renewal? It's a new prescription, but it's a renewal of an existing prescription. There's an existing transaction from which that second fax flows, so it's not an advertisement. That's the point of the FCC's transactional fax exception, is there is a preexisting transaction between the fax sender and the recipient of the fax. Here, there was no preexisting transaction between the sender and the recipient of the fax. Well, okay, I walk into the pharmacy, I see all these advertisements for various drugs. I think one of them is going to be helpful to me. I go to the pharmacy and say, hey, what about this one? They say, who's your doctor? We'll send a fax and see if he'll prescribe it for you. Is that an advertisement? Say that again, I'm sorry. I see these advertisements on television for all these wonderful drugs. I go to my pharmacist and I say, gee, this might help me. What do you think? They say, yeah, maybe it might. If your doctor will give us a prescription, we'll get it for you. They send him a fax saying, here's my doctor's name. See if he'll give it to me. Nothing wrong with that. Is it an advertisement? No. It's not an advertisement because they have basically told the supplier of the drug, we want this drug. And there's nothing wrong with that. They can do that. Well, isn't that exactly what the patient here is saying? I want the brace. The difference is they didn't, number one, it was a cold call. They didn't solicit this company. What difference does it make who initiates the call? Because it goes to the illegality. No, what difference does it make to whether it's an advertisement as to who initiated the call between the company and the patient? Because going back to the fact of what is the transaction, there is no transaction, no legitimate transaction to speak of, if, number one, it's the product of a fraud. The patient cannot order, cannot even initiate an order for fraudulent braces. And CBS can't do it on its behalf. The doctor knows this. Doctors are placed in difficult situations. They're the ones that have to exercise independent medical judgment and decide whether or not those braces are indeed for the patient. That's why this model, which is completely illegitimate, but it has to pitch the doctors to place the order because it knows it's pitching something that does not exist. It's an illusory product the patient cannot get. The doctor is the only one who can get, quote, free Medicare-paid equipment. Are these lawsuits profitable for Davis Neurology, these fax lawsuits? Well, Your Honor, I don't believe Davis Neurology has gotten anything yet in these lawsuits. No. I'm just wondering if they're really just offended by the technique here, whether this is the best avenue to combat in this case. Well, I'm out of time, Your Honor, but to answer your question, Dr. Davis in his deposition said, you know, I'm a doctor. I have limited time. I get a lot of these faxes, junk faxes, all day, requiring me to look at them, decide what they have merit, and whether to pitch them or give them regard. When he gets fake medical records, which is exactly what was faxed here, then that causes him a real problem. He's got to spend a lot more time to deal with that. It takes away from his practice. Yeah, but you've listed several other reasons why you think this is illegitimate aside from the fax statute. I just wonder if he's been advised about other ways to go at this one. But that's between you and him, so I just rhetorically ask. Thank you for your argument. Ms. McGinley, we'll hear from you. You may adjust that microphone so we can hear you. Thank you, Your Honor. And I think the podium goes down. Thank you, Your Honor. And may it please the Court, my name is Molly McGinley, and I represent EPALI, CBS Medical, Inc. The simple question presented by this appeal is whether the fax attached to Davis' complaint, which is a prescription request to a physician, is an advertisement. The answer is that the fax is not an advertisement. And how do we know it's not an advertisement? Well, you can look at it through many different lenses, but I'll focus on three today. First, on the face of the fax, the content just simply does not meet the definition of an unsolicited advertisement under the Telephone Consumer Protection Act. And second, every court that's considered similar faxes has concluded that they are not advertisements under the TCPA. And third, the FCC's transactional fax rule leads to the conclusion that the fax is transactional in nature and not advertising material. Before I turn to my first point, though, I'd like to clarify something up front. Appellant presents a rigid dichotomy that either the fax is transactional and therefore is not an advertisement, or the fax is not transactional and therefore is an advertisement. But that's not an accurate statement of the law. Even if the court were to conclude that the fax is not a transactional fax under the FCC order, it doesn't lead to the conclusion that it is an advertisement. Another initial point that I want to make, which I'll circle back to, at the end is that all of the arguments on illegality are not properly before the court. They were not raised until the first time in the motion for reconsideration, which the court properly denied. So, technically, those arguments should not be considered in connection with the review of the underlying grant of summary judgment, but rather in considering whether the court properly denied the motion for reconsideration. What do you mean by illegality? His arguments about the content of the phone call being Medicare fraud, none of that was raised until the motion for reconsideration. And the other point is that those arguments don't impact the decision about whether the fax is an advertisement. Let me ask you, does the fax tout the product at all? Does it suggest that this will help your patients, that sort of thing? It doesn't, Your Honor. It doesn't include any specific references to CBS Medical branded products. The references to products are simply by Medicare code. It doesn't sort of tout the effect of the braces over competitor products, for example. It simply provides factual information about the braces and what the braces purpose is. And, again, the faxes are not trying to sell anything to the recipient, to Davis Medical. And, in fact, the order was already placed by the patient. And going to that first point, the appellant sort of confuses the terms order in the colloquial commercial sense of the term order and doctor order. And here, certainly, a commercial order was placed when the patient called in and requested the braces. I thought the allegation was the patient did not call in. Your Honor, plaintiff makes reference to the deposition of Davis Neurology, in which he made a statement that the patient told him that it was a cold call. We submit the transcript of the call on this point, and it starts with, thank you for calling. So it indicates that a call, that the patient called. But, regardless, that fact is not material to the disputed issue. It does not bear on whether the fax is an advertisement or not. Because even if the transaction, even if he's correct that the transaction was illegal or that it could not have been completed, we know that it doesn't matter whether the transaction is pending or a completed transaction. Those kinds of communications are not advertisements. So it's transactional in nature, even if he's correct that the transaction could never be completed. Davis also argues that this is part of a broader marketing scheme. There's no cases that are on point that he references on this concept of a broader marketing scheme. There's no evidence in the record that this was, in fact, a marketing scheme. Again, the unrebutted testimony is that CBS Medical does not market to physicians. This was simply a back-end business processing communication in order to complete a pending transaction. The second point is that every court that has considered similar faxes has concluded that those faxes are not advertisements. So, first, the Northern District of Alabama in Florence. And then, again, that decision was affirmed by the 11th Circuit. And then also in our WAC Chiropractic versus MedCare. That was the recent subject of our Rule 28J submission, where the Northern These cases are squarely on point here. In all three cases, faxes were sent to physicians of patients who had previously requested the product. The faxes in each of the cases included instructions that asked the physician to complete and sign the attached prescription under doctor order form. And in all three cases, the purpose of the fax was to enable patients to provide Medicare with proof that they had medical necessity. Davis tries to distinguish these cases on the ground that the order here was fabricated. I think that if you look at the transcript in the record, it doesn't establish the fact that this was fabricated in any way. There's a long, in-depth discussion about the patient's medical issues, and those were then incorporated into the content of this fax. To the extent there are inaccuracies in what was provided to the doctor, the doctor could always correct that or choose not to sign the prescription. But it wasn't a fabricated order. Most definitely, the facts in this case are undisputed that there was a call with the patient, with Dr. Davis's own patient, in which she requested these braces. Davis also attempts to distinguish Florence on the ground that there the patient could not obtain an order without a prescription. I think the district court here found that that is not a true distinction. If you look at the fax of Florence, it makes clear that the faxes were sent only after a patient had initiated a sale by placing an order. Also, to the extent there's any confusion on that, Arwa clears it up. Is it, in fact, accurate that the patient could not make the order without the prescription? I mean, certainly, CVS would have sold them the braces. If they said, don't worry, I'm sending you the check. No, Your Honor, we would not have sent the braces if we didn't get, CVS Medical would not have sent the braces if it didn't get a prescription order from the doctor. But the patient had ordered in the sense that it had started a commercial transaction, provided her Medicare information, provided, you know, addresses. So CVS would not sell a brace outside of a prescription chain? Even though these particular braces, they're not like a controlled substance or something. You can buy braces similar, you know, all over the place, right, at the health supply store. If I walk into, you know, Sanford Health Supply and say, hey, I want to buy this brace, they'll ask me about my insurance. If I say I don't have insurance, they'll sell it to me if I throw cash over the barrel head, right? Yes, Your Honor. I mean, the braces would be sold if Medicare didn't cover it. They could pay for it out of pocket or they could pay for it through private insurance. But the patients do, for this kind of brace, my understanding is that they do require a prescription. But the facts are still the same as the Arwa case and the Florence case where they were selling, you know, durable medical equipment that did require a prescription and an order by a doctor for medical necessity to get Medicare to pay for it. And in this case, the patient was seeking to have Medicare cover all or a portion of the cost of the braces. And then so turning to Arwa, the court there did hold that the faxes did not seek to initiate new commercial transactions but to complete a necessary condition of a pending transaction. So we know from that case that there is no real distinction here about whether the transaction was complete or pending. And finally, turning to the FCC transactional fax rule, there's a lot of confusion here, I think, about whether the court is bound to follow the FCC transactional fax rule. And I would just point out that in ARIVA and in Arwa, the court didn't even – those courts didn't even reference the transactional fax rule. So although the FCC recognizes that communications that relate specifically to existing accounts or ongoing transactions are not advertisements as a matter of law, appellant focuses almost entirely on whether the fax here precisely fits within the scope of that rule. You know, to be clear, that is not an exception to the statute. It's not an exception that appears within a regulation. It's simply in an FCC order sort of an explanation of a category of faxes that do not constitute advertisements. So I think what Arwa and ARIVA were doing was analogous to the transactional fax rule. And the courts, therefore, found they were not advertisements because they were transactional in nature without relying specifically or expressly on that FCC order. And the court should do the same thing here. The FCC transactional fax rule is consistent with the conclusion that these faxes simply are not advertisements. So for those reasons, the court should affirm the district court's order granting CBS Medical's motion for summary judgment. Before I conclude, I'd just also like to touch on the denial of the motion for reconsideration. So as I mentioned, there is the issue about the illegality of the phone call was not raised until the first time in the motion for reconsideration. It was waived because it was not raised until that time. And I think plaintiff essentially concedes that it was not raised on pages 12 to 13 of the reply brief. So denial of the motion for reconsideration is reviewed for an abuse of discretion. And here, the court's decision to deny the motion for reconsideration is proper. Davis's motion for reconsideration did not identify any basis for altering the judgment. He did not provide any explanation as to why this argument was not presented earlier. And even if the argument had been raised before the motion for reconsideration, it has no impact on whether the fax was an advertisement or is an advertisement. Again, even if the transaction is a nullity, that doesn't alter the result of the nature of the communication. The communication remains transactional in nature. And furthermore, even if it's not transactional, a transactional communication under the FCC order, that doesn't mean that the fax is an advertisement. It still fails to meet that basic definition of an advertisement under the Telephone Consumer Protection Act. So unless there are any other questions, we ask that this court affirm the district's court's grant of summary judgment for CBS Medical and affirm the denial of Davis's motion for reconsideration. Did the discovery go into this method of securing prescriptions from doctors? Was there a discussion with CBS about this process? I'm not – there was a deposition of two individuals at CBS Medical. The – I'm not sure if your question is whether it got into whether the statements made on that phone call. No, I meant more generally. I just haven't had a chance to read the depositions. Do they testify about whether doctors typically sign these documents that are memorandum? Yes, Your Honor. Do doctors sign those? Yes, doctors do sign them. Again, that they are sending – these faxes are not sent to the physicians until a patient, you know, provides the name of the doctor. That's how they get the doctor's contact information is from the patient. So they are simply reporting on what – Some doctors will just get these and sign them, send them back? Your Honor, they may consult with their patients when they receive them. And it's the doctor's prerogative whether to sign it or not. Again, it's the cover page is a request for a prescription. And the idea here and the testimony of CBS Medical was that these are completed to assist doctors in, you know, providing the information that is provided by their patients into these forms. I know. They're just trying to be helpful to the doctors. And I just wondered – well, I can read the deposition. But thank you for your argument. Yes, Your Honor. Thank you. And let's see. I guess there's some time remaining for rebuttal. So we'll hear from Mr. Olinsky. Mr. Olinsky's time has expired. Mr. Olinsky's time has expired. Okay. Well, I think the case has been fully argued. And we appreciate both counsel appearing. The case is submitted. And the court will file an opinion in due course.